UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ATLANTIC CASUALTY INS. CO.,              :
                                         :
                    Plaintiff,           :     **MEMORANDUM AND ORDER**
                                         :         06 CV 4036 (DLI)
         -against-                       :
                                         :
C.A.L. CONSTRUCTION CORP. and            :
ISRAR HUSSAIN,                           :
                                         :
                    Defendants.          :
-------------------------------------------------------X

**DORA L. IRIZARRY, United States District Judge**:

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") brought this action against defendants C.A.L. Construction Corporation ("C.A.L.") and Israr Hussain ("Hussain") seeking declaratory relief, damages, and attorneys' fees. Defendants answered the complaint denying certain allegations and raising affirmative defenses. At the close of discovery, Atlantic Casualty filed the instant motion seeking summary judgment. Defendants failed to file any opposition to this motion.[1] For the reasons set forth below, this court grants in part and denies in part Atlantic Casualty's motion for summary judgment.

---

[1] The court notes that Atlantic Casualty provided an affidavit of service, certifying service of the motion to both defendants. Until recently, defendants, through their counsel, participated actively in this case. Defendants answered the complaint, participated in discovery, and attended status conferences. Counsel for both defendants failed to appear to a pre-motion conference held on August 8, 2007. The court ordered defendants to show cause why they should not be sanctioned for failure to appear. Hussain's counsel provided an affirmation on August 8, 2007. To date, counsel for C.A.L. has had no further contact with the court.

1

## I. Background

### A. Underlying State Court Action

The following facts are undisputed or, when disputed, construed in favor of the non-moving defendants. Hussain, a tenant, lived in a building owned by Azmai Iqbal ("Iqbal") in Elmhurst, New York. (Deckman Aff. ¶¶ 4-6). During Hussain's tenancy, C.A.L. and additional individuals and entities performed construction work at the apartment building pursuant to Iqbal's renovation plans. (Pl. Mem. 13). On the evening of June 12, 2005, Hussain tripped on construction debris, consisting of piping, discarded on a walkway outside the apartment building. (Pl. 56.1 ¶ 9; Hussain Depo Tr. 37). Hussain suffered physical injuries and incurred costs for medical treatment and lost wages during a period of disability. (Pl. 56.1 ¶ 5).

On December 13, 2005, Hussain filed a negligence suit against Iqbal, in New York State Supreme Court, Queens County, captioned *Israr Hussain v. Azmai Iqbal*, Index No. 26831/05. (Pl. 56.1 ¶¶ 5, 9; Deckman Decl. Ex. A). On April 5, 2006, Iqbal filed a third party complaint against C.A.L. (collectively the "Hussain Action"). (Pl. 56.1 ¶ 11; Deckman Decl. Ex. C). Atlantic Casualty, C.A.L.'s general commercial liability carrier, agreed to defend C.A.L. in the Hussain Action under a reservation of rights in a letter dated July 17, 2006. (Pl. 56.1 ¶ 14; Jones Aff. Ex. A).

On August 17, 2006, Atlantic Casualty brought this action against defendants C.A.L. and Hussain, seeking (i) a declaratory judgment relieving it of its duties to defend and indemnify C.A.L. or any other party to the Hussain Action for lack of coverage, (ii) damages on theories of unjust enrichment, indemnity, contribution, and contract, and (iii) attorneys' fees. *See* Compl. ¶¶ 23-27. Defendant C.A.L. answered denying untimely notice and lack of coverage and asserting an affirmative defense. Defendant Hussain answered and raised numerous affirmative defenses.

**B.     Iqbal-C.A.L. Agreement**

Iqbal hired C.A.L. to perform certain construction work at the apartment building. Their contract consisted of several handwritten agreements and invoices. (Deckman Decl. Ex. D). C.A.L. and Iqbal agreed that C.A.L. would reconstruct the basement of the apartment building, build an exterior staircase, install doors, lights, air conditioning, and windows, and perform certain plumbing work, demolition work, electrical work, foundation work, brick work, and rooftop renovations. (Deckman Decl. 11).

**C.     Work Attributed to C.A.L.**

Atlantic Casualty contends that C.A.L. operated as a general contractor, hiring subcontractors for various trades. (Pl. 56.1 ¶ 7; Pl. Mem. 4-5). The court reviewed the record for any evidence favorable to defendants on this point. C.A.L., through its president, Carlos Lazzo ("Lazzo"), admitted the following facts in a deposition taken in the underlying Hussain Action: (i) Lazzo had a New York City general contractor's license (Lazzo Depo. Tr. 11); (ii) C.A.L. was responsible for all non-plumbing work, including sheet rock installation, painting, brick work, rooftop renovations, certain demolitions, installation of a toilet and sink, construction of a driveway and an entrance ramp for the disabled, and electric work (Lazzo Depo. Tr. 25, 29-33, 61); (iii) C.A.L. hired and paid Scott Electric to perform electrical work (Lazzo Depo. Tr. 24, 25, 66-67, 93); (iv) C.A.L. paid for duct work performed by another company (Lazzo Depo. Tr. 83-84); (v) C.A.L. hired and paid a company to pour concrete for an exterior staircase (Lazzo Depo Tr. 84); (vi) C.A.L. hired and paid a company to install an exterior door (Lazzo Depo Tr. 84); (vii) C.A.L. scheduled and coordinated the work of the various trade workers, except for plumbing (Lazzo Depo. Tr. 29); and (viii) Scott Electric used

3

pipes as part of its electric work (Lazzo Depo. Tr. 68-70). C.A.L. denied that it was responsible for hiring, supervising or paying the plumbing company, Tito Plumbing. (Lazzo Depo Tr. 22, 24, 28, 29, 77).

**D.     Atlantic Casualty-C.A.L. Policy**

At the time of Hussain's injury, C.A.L. had a commercial general liability policy with Atlantic Casualty, policy number L068002494 (the "Policy"). (Pl. 56.1 ¶ 1; Jones Aff. Ex. C). C.A.L. submitted a "Contractors/Artisans Questionnaire" (the "Questionnaire") to Atlantic Casualty, prior to issuance of the Policy. (Jones Aff. Ex. B; Pl. Mem. 5). In the Questionnaire, C.A.L. stated that it operated solely as a subcontractor and limited its operations to interior carpentry and drywall work. (Jones Aff. Ex. B; Pl. Mem. 6). Relying on the information contained in the Questionnaire, Atlantic Casualty issued the Policy. (Parraga Aff. ¶ 6). The Policy insured C.A.L. for losses resulting from two specified operations—interior carpentry and drywall. (Jones Aff. Ex. C; Pl. Mem. 10). The Policy Declaration page contained only two classifications: "Carpentry - interior" and "Dry Wall or Wallboard Installation." (Jones Aff. Ex. C). There was no coverage for losses resulting from "operations which are not classified or shown on the Commerical General Liability Coverage Declarations, its endorsements or supplements" (Jones Aff. Ex. C); and losses "arising out of the actions of independent contractors/subcontractors for or on behalf of [C.A.L.]." (Jones Aff. Ex. C; Pl. Mem. 11).

The Policy set forth C.A.L.'s duty to provide notice to Atlantic Casualty of accidents, claims, potential claims, and legal proceedings. The Policy required C.A.L. to notify Atlantic Casualty of any occurrences, offenses, claims, or suits "as soon as practicable." (Jones Aff. Ex. C; Pl. Mem. 11). The Policy required C.A.L. to "immediately send [Atlantic Casualty] copies of any demands, notices,

4

summonses or legal papers received." (Jones Aff. Ex. C; Pl. Mem. 11).

**E.     Notice to Atlantic Casualty**

Atlantic Casualty asserts that it first received notice from C.A.L. of Hussain's accident, and the Hussain Action on May 23, 2006 (Pl. 56.1 ¶ 12), and that Hussain never provided notice of his accident or lawsuit. (Pl. 56.1 ¶ 13). The court reviewed the record for any facts favorable to the non-moving defendants. The Iqbal third-party summons and complaint is dated March 24, 2006. (Deckman Decl. Ex. C). The front pages of both documents contain handwritten notations indicating that Iqbal filed these documents on April 5, 2006. (Deckman Decl. Ex. C). The record does not contain an affidavit of service for the summons and complaint. The only other evidence relevant to service is contained in the C.A.L. Interrogatories. C.A.L. asserted that it received the third party complaint on or about May 1, 2006 and that it first learned of the accident and Hussain Action when served. (C.A.L. Int. 8). These assertions contradict Lazzo's deposition testimony. Lazzo admitted that he first learned of the accident and Hussain Action as early as August 2005. (Lazzo Depo. Tr. 17, 20, 66). Notably, at some time, Lazzo assisted Capital Carriers, an insurance company, with its investigation of the accident. (Lazzo Depo. Tr. 70-71). Moreover, in its Interrogatories, C.A.L. asserted that it provided Atlantic Casualty with notice of the Iqbal third-party complaint on or about May 15, 2006. (Int. 15). C.A.L. has not provided any additional clarification of the rough time-line of events asserted in its interrogatories. Nothing in the record indicates that Hussain provided notice to Atlantic Casualty.

**II.      Discussion**

   **A.     Declaratory Relief**

Courts have no statutory obligation to entertain actions seeking declaratory relief. Instead, courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (*emphasis added*); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 278 (1995) (noting that the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant") (*internal quotations omitted*). Courts should entertain actions seeking declaratory relief if: (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," or (2) "[the judgment] will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Broadview Chem. Corp. v. Locite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). In certain instances, courts should decline to exercise their declaratory jurisdiction. Indeed, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in the state court, a district court might be indulging in a gratuitous interference if it permitted the federal declaratory action to proceed." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) (*internal quotations omitted*).

Atlantic Casualty commenced this action seeking declaratory relief from a federal court after the commencement of the Hussain Action in state court. The court proceeds cautiously into resolution of such disputes; however, the court is satisfied that the instant action for declaratory relief is properly before it. Atlantic Casualty is not a party to the Hussain Action and therefore, cannot litigate its duty to indemnify C.A.L. and Hussain in that action. The court's resolution of this action will clarify Atlantic Casualty's otherwise uncertain obligations in the Hussain Action. *See U.S.*

*Underwriters Ins. Co. v. Kum Gan Inc., et. al.*, 443 F. Supp. 2d 348, 354-56 (E.D.N.Y. 2006) (providing declaratory relief to two insurers to clarify their rights in an underlying state court action in which they are not parties).

**B.     Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

If a motion for summary judgment is unopposed, courts "must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact

and its entitlement to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). To do so, courts "may not rely solely on the statement of undisputed facts;" rather, they "must be satisfied that the citation to evidence in the record supports the assertion." *Id*. If the movant fails to meets its burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id*.

### 1. Coverage

Under New York law, "an insurer's duty to indemnify arises under the insurance contract." *Trans. Ins. Co. v. AARK Constr. Group*, 526 F. Supp. 2d 350, 356 (E.D.N.Y. 2007). Insurers seeking to negate coverage by virtue of an exclusion "must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Cont. Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993). Courts interpret exclusions narrowly and resolve "[a]ny ambiguities . . . in favor of the insured." *Marino v. N.Y. Tel. Co.*, 944 F.2d 109, 112 (2d Cir. 1991); *Cont. Cas. Co.*, 80 N.Y.2d at 652-55.

#### a. Contractors Hired By Iqbal

Atlantic Casualty contends that it has no duty to indemnify C.A.L. or any other parties for injuries resulting from work performed by individuals or entities hired directly by Iqbal. The parties do not contest that Iqbal hired, supervised, and paid Tito Plumbing for certain plumbing work. (Pl. Mem. 12; Lazzo Depo Tr. 22, 24, 28, 29, 77). Atlantic Casualty insures neither Iqbal nor Tito Plumbing. There is no evidence suggesting that C.A.L. hired, supervised, or paid Tito Plumbing. To the extent Hussain's injuries are attributable to the negligence of Tito Plumbing, Atlantic Casualty has no duty to indemnify C.A.L. or any other party.

### b. Scope of Work Covered By the Policy

Atlantic Casualty contends that it has no duty to indemnify C.A.L. for liability arising out of work performed by C.A.L. in excess of the operations for which C.A.L. purchased insurance. The Policy contains a "Classification Limitation" endorsement barring coverage for any injuries or claims resulting from "operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements." (Jones Aff. Ex. C). In its General Liability Coverage Declarations, C.A.L. stated that its operations included "Carpentry - Interior" and "Dry Wall or Wallboard Installation," and the Policy provided coverage for these two operations. (Jones Aff. Ex. C). The Declaration form did not limit C.A.L. to declaring these two trades; rather, C.A.L. had the opportunity to declare and purchase insurance for any number of additional trades. (Jones Aff. Ex. C). The same is true for the Questionnaire, in which C.A.L. had the opportunity to declare its operations from a long list of trades and it selected just two—interior carpentry and drywall. (Jones Aff. Ex. B).

Lazzo admitted that under the Iqbal-C.A.L. Agreement, C.A.L. was responsible for all work at the site that did not involve plumbing. His obligations included sheet rock installation, painting, brick work, rooftop renovations, demolition, installation of a toilet, sink, doors, and windows, construction of a driveway and an entrance ramp for the disabled, and electric work. (Lazzo Depo. Tr. 25, 29-33, 61). Lazzo admitted that he scheduled and coordinated the work of all of the tradesmen except for the plumbers. (Lazzo Depo. Tr. 29). By its own admissions, C.A.L.'s obligation to Iqbal and the work actually performed exceeded its declared operations—interior carpentry and drywall. C.A.L. has not and cannot argue that it limited its operations solely to interior carpentry and drywall. In particular, rooftop renovations, exterior brick work, the construction of

a driveway, and the construction of an entrance ramp exceed the scope of what can be classified as interior carpentry and dry wall work. *See Mt. Vernon Fire Ins. v. Chios Constr. Corp.*, No. 94-CV-6107(SS), 1996 WL 15668, *2 (S.D.N.Y. Jan. 17, 1996) (defining carpentry as "relat[ing] to woodworking" and arguably woodworking preparatory work). Further, C.A.L. has provided no argument that the classification limitation is unclear or ambiguous. Courts do interpret exclusions narrowly; however, it is appropriate to enforce an exclusion against an insured to bar coverage of operations broader than those disclosed and covered, particularly when the insured had the opportunity to purchase appropriate insurance coverage. *See id.* at *2-4 (denying coverage of an injured subcontractor under a general commercial liability policy as the work performed by the subcontractor fell outside the scope of the limited covered operations, interior carpentry). To the extent that C.A.L. is liable in the Hussain Action for injuries arising out of work performed in excess of its declared and insured operations—interior carpentry and drywall—Atlantic Casualty has no duty to indemnify C.A.L. This holding is limited to the issue of coverage. The court makes no finding as to whether the injuries suffered by Hussain can or cannot be attributed to C.A.L.'s carpentry and dry wall work.

### c. C.A.L. Subcontractors

Atlantic Casualty contends that it has no duty to indemnify any parties in the Hussain Action for liability resulting from the actions of C.A.L.'s subcontractors as the Policy provided no coverage for subcontractors. (Pl. Mem. 13-15). The Policy contains several documents detailing exclusions from coverage. The following provision regarding independent contractors and subcontractors is contained in the "Exclusions/Limitations - Combination Endorsement":

> You and any insured are not covered for claims, loss, costs or expense arising out of the actions of independent contractors/ subcontractors for or on behalf of any insured.

(Jones Aff. Ex. C). By its own admissions, C.A.L. hired subcontractors for electrical work, duct work, concrete work, and the installation of certain doors. (Lazzo Depo. Tr. 24-25, 66-67, 83-84, 93). Further, Lazzo held a general contractor's license. (Lazzo Depo. Tr. 11). C.A.L. has provided no argument suggesting that the trade workers described as subcontractors were C.A.L. employees and not subcontractors. Morever, the evidence would not support such an argument. Further, there are no arguments from C.A.L. to suggest that this exclusion is unclear or ambiguous. Courts have enforced similar exclusions barring coverage for subcontractors. *See Mt. Vernon Fire Ins. Co.*, 1996 WL 15668, *2-4 (denying coverage of an injured subcontractor under a policy expressly excluding subcontractors from coverage). The court, upon its inspection of the record, finds nothing unclear or ambiguous about the subcontractor exclusion to the Policy. It bars coverage of liability C.A.L. might incur arising out of work performed by subcontractors. Thus, Atlantic Casualty has no duty to indemnify C.A.L. for liability attributed to the negligence of any of C.A.L.'s subcontractors. This holding is limited to the issue of coverage. The court makes no finding as to whether the injuries suffered by Hussain can or cannot be attributed to C.A.L.'s subcontractors.

**D.     Rescission**

Under New York law, an insurer is entitled to rescission of a policy if the insurer demonstrates that the insured made a material misrepresentation. *See, e.g.*, *Parmar v. Hermitage Ins. Co.*, 21 A.D.3d 538, 540 (2d Dep't 2005). "A misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented." *Id*. The issue of materiality is generally a question of fact for the jury; however, materiality is properly before a court if the insurer

establishes it as a matter of law. *Id*. To do so, "the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks . . . ." *Id.*, *accord First Fin. Ins. Co. v. Allstate Int. Dem. Corp.*, 193 F.3d 109, 119 (2d Cir. 1999) ("[T]he New York courts have consistently held that to meet the burden of proof on materiality, an insurer must submit evidence of its underwriting practices with respect to similar applicants."). "Conclusory statements by insurance company employees, unsupported by documentary evidence, are insufficient to establish materiality as a matter of law." *Parmar*, 21 A.D.3d at 540-41; *accord Ocean Walk, Ltd. v. Lloyd's of London*, No. 03-CV-5271(DRH)(ARL), 2006 WL 2689626, *8-9 (E.D.N.Y. Sept. 19, 2006) (denying summary judgment and holding that an affidavit of an underwriter asserting that he would not have sold the policy had he known the misrepresented facts without any further documentation or proof of the underwriter's practices failed to meet the insurer's burden of establishing materiality, even if no such written guidelines existed).

Atlantic Casualty contends that it is entitled to rescission on the ground that C.A.L. made material misrepresentations as to its operations in its application for insurance, the Questionnaire. (Pl. Mem. 15-21). In support of its argument, Atlantic Casualty submitted the affidavit of Allen Parraga ("Parraga"), Vice President of Underwriting. The Parraga affidavit states that "Atlantic Casualty never intended to insure CAL as a 'General Contractor.'" (Parraga Aff. ¶ 4). Further, if Atlantic Casualty had known that C.A.L. operated as a general contractor, "it would have had to decide if it would have written the account, and if the account was written what the additional premium would be, decide which additional classifications were needed and if any additional amendatory endorsements were required." (Parraga Aff. ¶ 6). Atlantic Casualty did not attach any of its internal procedures, practices or guidelines regarding underwriting to this affidavit or to any

other documents submitted in support of its motion. Moreover, the affidavit contains no details of Parraga's underwriting experiences and practices regarding similar applicants. The conclusory statements contained in the Parraga Affidavit, without more, are insufficient to establish materiality as a matter of law. Atlantic Casualty's motion for summary judgment is denied to the extent that it seeks rescission of the Policy.

### E. Notice

Under New York law, an insured must comply with the notice provisions contained in its insurance policy once it is aware of a loss. An insured is deemed to be aware of a loss "once an insured has obtained facts that would cause a reasonable person" to recognize the potential for a claim under its policy. *See, e.g.*, *Utica Mut. Ins. Co. v. Firemen's Fund Ins. Co.*, 748 F.2d 118, 122 (2d Cir. 1984). "[C]ompliance with notice[] provision[s] in an insurance policy is a condition precedent to an insurer's liability under the policy." *Trans. Ins. Co.*, 526 F. Supp. 2d at 358. "Late notice is a complete defense to liability whether or not the insurance company was prejudiced by the delay." *Id*. Courts evaluate whether an insured provided timely notice under the standard of reasonableness. An insurer establishes unreasonable delay as a matter of law by demonstrating that "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." *Id*. Absent an excuse, a delay in reporting an occurrence to an insurer more than one month after receiving a complaint amounts to unreasonable delay as a matter of law. *See Safer v. GEICO*, 254 A.D.2d 344, 345 (2d Dep't 1998) (reversing summary judgment and denying coverage for unreasonable delay of notice).

Injured parties have a right, independent of the insured's notice obligations, to give notice to the insurer of their injuries. Injured parties should not be "charged vicariously with an insured's

13

delay" of notice, unless they "fail[] to exercise the independent right to notify an insurer." *See Maldonado v. C.L.-M.I. Props., Inc.*, 39 A.D.3d 822, 823 (2d Dep't 2007). If an injured party fails to give notice of the injury to the insurer, the injured party fails to exercise its right to provide independent notice and will be bound by any disclaimer of coverage issued by the insurer to the insured. *Id.* (holding that an injured party is bound by the disclaimer of liability issued to an insured because the injured party never gave notice of the injury to the insurer).

Atlantic Casualty contends that C.A.L.'s unreasonable delay in notifying it of the Hussain accident, Hussain Action, and the Iqbal third-party action vitiates any duty to indemnify C.A.L. (Pl. Mem. 21-26). Additionally, Atlantic Casualty contends that Hussain, the injured claimant, is bound by C.A.L.'s breach because Hussain failed to provide any notice to Atlantic Casualty of his accident. (Pl. Mem. 21-26). The Policy contains several notice provisions. Under the Policy, C.A.L. is required to notify Atlantic Casualty "as soon as practicable" of any occurrences, offenses, claims, or suits. (Jones Aff. Ex. C; Pl. Mem. 11). Additionally, C.A.L. is required to "immediately send [Atlantic Casualty] copies" of all demands, notices, summonses or legal papers. (Jones Aff. Ex. C; Pl. Mem. 11). Atlantic Casualty asserts that it first received notice from C.A.L. of the Hussain accident, Hussain Action, and Iqbal third party action on May 23, 2006. (Pl. 56.1 ¶ 12). The court notes that neither defendant disputed Atlantic Casualty's contentions. The court reviewed the record, nonetheless, for any evidence favorable to defendants.

The first issue is whether C.A.L.'s delay in notifying Atlantic Casualty of receipt of the Iqbal third party action is unreasonable as a matter of law. The Iqbal third-party summons and complaint is dated March 24, 2006. (Deckman Decl. Ex. C). There is handwriting on the front pages of both documents indicating that Iqbal filed them on April 5, 2006. (Deckman Decl. Ex. C). The record

does not contain an affidavit of service for the summons and complaint. The only other evidence relevant to the date of service on C.A.L. is found in C.A.L.'s Interrogatories. C.A.L. asserted that it received the third-party complaint "on or about May 1, 2006," and provided Atlantic Casualty with a copy of the complaint "on or about May 15, 2006." (C.A.L. Int. 8-10). This vague time-line, without more, is not helpful to the court. C.A.L. has presented no additional evidence to dispute Atlantic Casualty's contention. The record supports a finding that Atlantic Casualty first received notice on May 23, 2006. Further, the record supports a finding that C.A.L. provided Atlantic Casualty with legal documents served on it—the Iqbal third-party complaint—48 days after receipt. C.A.L. failed to provide Atlantic Casualty with the "immediate" notice of receipt of legal papers as required under the Policy. Moreover, C.A.L. provided no excuse for its delay. C.A.L.'s delay is unreasonable as a matter of law.

Additionally, there is evidence suggesting that C.A.L. breached other notice provisions, namely, the provisions requiring timely notice of occurrences, potential claims, and claims. C.A.L. admitted that, as early as August 2005, it knew of the accident and Hussain's suit against Iqbal. (Lazzo Depo. Tr. 17, 20, 66). Lazzo's deposition testimony contradicts the assertion that C.A.L. first learned of the accident and Hussain Action on May 1, 2006, contained in C.A.L.'s interrogatories. (C.A.L. Int. 10). Lazzo knew that Scott Electric used pipes as part of its electric work. (Lazzo Depo. Tr. 68-70). Moreover, at some point, Lazzo assisted Capital Carriers, an insurance carrier, with its investigation of the accident. (Lazzo Depo. Tr. 70-71). These admissions demonstrate that C.A.L. knew of the accident and the Hussain Action long before C.A.L. notified Atlantic Casualty. A reasonable person under these circumstances would have recognized the potential for a claim under the Policy long before C.A.L. provided notice to Atlantic Casualty.

As a final matter, Hussain never provided notice of his accident or the Hussain Action to Atlantic Casualty, even after Iqbal filed the third-party complaint against C.A.L. Hussain, too, did not provide this court with an excuse for his failure to provide notice to Atlantic Casualty. Hussain did not exercise his independent right of notice and cannot now rely on the protections of that doctrine. Hussain is bound by C.A.L.'s breach of the notice provisions of the Policy.

Atlantic Casualty has no duty to indemnify C.A.L. for any liability it incurs in the Hussain Action as C.A.L. breached the notice-of-occurrence provisions in the Policy. Moreover, because Hussain failed to exercise his independent right to give notice to Atlantic Casualty, Atlantic Casualty has no duty to indemnify Hussain for his injuries.

## CONCLUSION

For the reasons set forth above, Atlantic Casualty's motion for summary judgment is granted to the extent that it seeks a declaration that it has no duty to indemnify C.A.L. or Hussain for liability incurred in the underlying Hussain Action. Atlantic Casualty's motion for summary judgment is denied to the extent that it seeks rescission of the Policy.

SO ORDERED.

Dated: Brooklyn, New York
July 29, 2008

/s/
Dora L. Irizarry
United States District Judge